WILLIAM M. NARUS, CAB #243633
Acting United States Attorney
District of Oregon
**LEWIS S. BURKHART, OSB #082781**
Assistant United States Attorney
Lewis.Burkhart@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:24-cr-00319-AB |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **CHRISTOPHER RAYMOND FOX-SOUTHARD,** | |
| **Defendant.** | |

**Introduction**

While on supervised release for his prior federal gun conviction, the defendant ran from a stolen car, ditched a privately manufactured firearm loaded with Blazer ammunition, before getting caught in a muddy ravine. The government recommends a sentence of 26 months imprisonment followed by 3 years of supervised release.[1] Additionally, the government requests

---

[1] The government's recommendation was reduced from 37 months to 26 months to accommodate for credit for time served the parties do not believe the Bureau of Prisons will give to the defendant.

**Government's Sentencing Memorandum**            **Page 1**

his supervised release in 3:21-cr-00163-AB be revoked and sentenced to 18 months imprisonment consecutive for a total of 44 months imprisonment.

**Factual Background**

**A.    The Offense Conduct**

On July 29, 2024, members of the Port of Portland Police observed a parked silver Jeep with an Oregon temporary tag in the back window near a 7-Eleven. The officers saw the defendant and a female exit the Jeep and walk into a 7-Eleven store. Officers ran the temporary tag and discovered the vehicle to be stolen. Officers went to confront the suspects; however, a 7-Eleven employee informed them that the two individuals ran out of the back door. Officers located both individuals and attempted to approach them. When they saw the officers, they sprinted on foot down a paved path, then into a staircase behind a hotel. While in pursuit, law enforcement gave them verbal reprimands to stop, to which they disregarded. (PSR ¶ 18).

The officers caught up to the female and detained her. She informed law enforcement that she did not know the driver (Defendant). She advised that she had gotten into a fight with a friend and asked the defendant for a ride to the shelter she was residing at. She further added that while they were inside of the 7-Eleven, the defendant became aware that law enforcement was outside and proceeded to run out of the store. She noted that she followed him because she thought his reaction was weird. (PSR ¶ 19).

The officers lost sight of the defendant but found him several minutes later stuck in the mud at the bottom of a ravine. Officers observed a black cross body bag located on the defendant. He was given verbal commands to come out of the ravine, but he did not comply. He

continued to climb deeper into the wooded area, and the officers ended the pursuit. Additional Port of Portland police officers were called for backup at the scene. (PSR ¶ 20).

A nearby tow lot contacted the officers, advising they had surveillance of the defendant entering their property and actively trying to break into parked vehicles. He was also observed tossing something onto the property with a hook shot type throw. Two screenshots of the video surveillance show the defendant tossing an object.



Officers searched the area where the defendant was seen throwing an object and located a loaded black Glock style privately manufactured firearm 9mm handgun with a gold barrel and a round in the chamber. The ammunition found loaded in the firearm was identified as Blazer 9mm ammunition. Through further investigation, it was determined that the ammunition was manufactured outside of Oregon. (PSR ¶ 21). Below are photos of where officers seized the firearm, a closeup of the firearm and the Blazer ammunition loaded into the firearm.





Three hours later, members of the Portland Police Bureau and Port of Portland Police located the defendant in a swamp area of the woods. They surrounded the defendant and detained him without incident. When asked by law enforcement why he ran, the defendant stated, "I just seen ya'll chasing me." Officers instructed him to remove the black cross body bag from his person. The bag was identified as a Highland Tactical sling bag, a company known to

**Government's Sentencing Memorandum**                                                                             **Page 4**

manufacture pistol and rifle bags for military and law enforcement. Officers searched the bag and located an empty gun holster. (PSR ¶ 22).



Both the defendant and the female were escorted back to the stolen vehicle. Law enforcement ran the defendant's name and discovered he had a parole violation warrant in case #21CR11758 and a supervised release violation warrant in case #3:21-cr-00163. Officers conducted a search of the Jeep and located a black duffle bag and a red Jordan backpack that belonged to the defendant. Inside of the backpack, officers located an Allen handgun holster that was roughly the same size as the handgun seized. In addition, throughout the vehicle and the defendant's property was various drug paraphernalia and unknown drug residue. The defendant was subsequently arrested on the warrants and taken into custody. (PSR ¶ 23).

**Government's Sentencing Memorandum**                                                      Page 5

### B. The Charges and Plea Agreement

On February 18, 2025, Defendant pled guilty to a one-count indictment which charged Felon in Possession of Ammunition, in violation of Title 18, United States Code Sections 922(g)(1).[2] The defendant's guilty plea was entered pursuant to a written Rule 11(c)(1)(B) plea agreement. The Court is not bound by the recommendation of the parties or the presentence report. The defendant may not withdraw any guilty plea or rescind the plea agreement if the Court does not follow the plea agreement or the recommendations of the parties. (PSR ¶ 3).

### C. Guidelines Computation

The government agrees with the PSR calculation of the base offense level of 14. USSG § 2K2.1(a)(6)(A). (PSR ¶ 29). Four levels are applied due to the possession of the firearm and ammunition in connection with another felony offense. USSG §2K2.1(b)(6)(B). (PSR ¶ 30). Defendant has shown acceptance of responsibility, so a three-level reduction applies, provided he continues to demonstrate acceptance of responsibility. USSG §3E1.1(a),(b) (PSR ¶ 37 – 38). The government further recommends a one-level reduction under 18 U.S.C. § 3553(a) for pleading guilty before the second trial date.

| Count 1: 18 U.S.C. § 922(g)(1) – Felon in Possession of Ammunition | | |
|---|---|---|
| USSG §2K2.1(a)(6)(A) | Base Offense Level | 14 |
| USSG §2K2.1(b)(6)(B) | Specific Offense Characteristics | +4 |
| USSG §3E1.1(a) and (b) | Acceptance of Responsibility | -3 |
| 18 U.S.C. § 3553(a) | | -1 |
| | **Adjusted Offense Level** | 14 |

---

[2] The government was unable to charge felon in possession of a firearm because the seized firearm was a privately manufactured firearm (aka ghost gun) and we cannot prove the gun traveled through interstate or foreign commerce beyond a reasonable doubt. For purposes of sentencing, there is no functional difference between felon in possession of a firearm or a felon in possession of ammunition.

**Government's Sentencing Memorandum**                                              **Page 6**

D. **Criminal History**

| Crime | Conviction Date | Jurisdiction | Sentence |
|---|---|---|---|
| Theft II (viol) | 05/01/2017 | Multnomah County Circuit Court | Fines/Fees |
| Theft III (viol) | 05/01/2017 | Multnomah County Circuit Court | Fines/Fees |
| Unauthorized Use of a Vehicle (felony)<br>Reckless Driving (misd) | 09/15/2017 | Multnomah County Circuit Court | 9 months |
| Unauthorized Use of a Vehicle (felony) | 09/15/2017 | Multnomah County Circuit Court | 3 years probation |
| Fleeing or Attempting to Elude a Police Officer (misd) | 02/11/2020 | Multnomah County Circuit Court | 15 days |
| Unauthorized Use of a Vehicle (felony)<br>Theft II (misd) | 02/15/2022 | Multnomah County Circuit Court | 24 months |
| Felon in Possession of a Firearm (felony) | 01/31/2022 | U.S. District Court (Oregon) | 40 months |
| Unauthorized Use of a Vehicle (felony) | 02/15/2022 | Multnomah County Circuit Court | 28 months |
| Unauthorized Use of a Vehicle (felony), Forgery I (felony), Escape III (misdemeanor) | 5/2/2025 | Multnomah County Circuit Court | 60 months |

The facts of the defendant's 2022 federal felon in possession of a firearm (3:21-cr-00163-AB) are similar to the facts of the current case. Both cases involved stolen vehicles, eluding law enforcement and being caught trying to ditch firearms on video surveillance. In 2022, Multnomah County Sheriff's Deputies saw a vehicle suspected to be stolen. The vehicle began to elude the deputies and momentarily got away. Deputies found the vehicle, but did not locate the defendant or the other occupants. While searching the area, a deputy found a backpack and a sawed-off shotgun in a stairwell of a business center. Deputies later reviewed surveillance footage and he was caught trying to ditch a sawed-off shotgun. See screen shots of video surveillance below. Deputies then located the defendant nearby. (PSR ¶ 48).

**Government's Sentencing Memorandum**             **Page 7**




The total criminal history score is sixteen. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of sixteen establishes a criminal history category of VI. (PSR ¶ 52).

E. **Supervised Release Violation - 3:21-cr-00163-AB**

The defendant is facing a supervised release violation in 3:21-cr-00163-AB for failure to obey all laws (Mandatory Condition #1), live at an approved residence (Standard Condition #5), follow instructions of the probation officers (Standard Condition #13) and using methamphetamine and fentanyl (Special Condition).

**Government's Sentencing Memorandum**                                                        **Page 8**

The failure to obey all laws is a Grade B Violation and he was a Criminal History Category IV at the time of sentencing. (USSG §§ 7B1.1(a)(2), 7B1.4). The Court "shall" revoke the supervised release for a Class B violation. (USSG § 7B1.3(a)(1)). The defendant is facing 12-18 months imprisonment for the revocation. (USSG § 7B1.4).

While the defendant pled guilty to the new criminal activity, he has not admitted he violated the terms of his supervised release. The government is requesting that after he admits to violating his supervised release conditions that he be revoked and sentenced to 18 months consecutive to 3:24-cr-00319-AB.[3] The government is not seeking the reimposition of any new term of supervised release because of the expectation he will receive a new term of supervised release in 3:24-cr-00319-AB.

F.     **Credit for Time Served**

The defendant was initially arrested by the state and held in state custody. The United States obtained a writ to bring the defendant into federal custody. [ECF 7]. The parties believe the defendant was in primary state custody and will _not_ receive any credit for the approximate eleven months he was in pretrial custody. Under USSG § 5G1.3(b)(2) a court can adjust the sentence to account for the time a defendant will not be credited by the Bureau of Prisons. The government proposes to reducing our sentencing recommendation by eleven months. USSG § 5G1.3(b)(2).

On April 30, 2025, the USSG Guidelines were amended and gave more direction for USSG § 5G1.3(b). Pursuant to Note C in § 5G1.3, the government requests the Court notes on

---

[3] Based on conversations with United States Probation Officer Brandon Bowen, the United States believes the probation department is an agreement with this recommendation.

**Government's Sentencing Memorandum**                                                              **Page 9**

the judgment that USSG § 5G1.3(b) subsection applies, the court reduced the sentence by eleven months and the reduction was done based on Multnomah County Court Case Number: 24CR38914.

### G. Government's Recommended Sentence

The defendant is a member of the Hoover Criminal Gang (Hoovers). (PSR ¶ 63). Local gang investigators also believe the defendant will associate with the Krude Rude Brood (Broods) gang. Defendant's association with both gangs is an oddity in the gang world because there is normally very little cross over between those two gangs. The Hoovers are a gang built on being the most violent and notorious in the Portland area. Broods are more involved in drugs, property crime (such as stealing cars) and violence. Local gang investigators believe that Defendant associates with the Hoovers when he is not using drugs, nor stealing cars. When he is using drugs and stealing cars, he associates with the Broods. Defendant's association with either gang is recipe for criminal activity, just with different ingredients and results. Either way, he is a risk to the public either for violence or drugs and stolen cars.

Since 2017, the defendant continually lands in prison with repeated felonies. Supervision is not working. The defendant continues to associate himself with criminals and drugs. The result is more criminal activity. He needs to stop using drugs, stop congregating with criminals and gang members, stop possessing firearms and stop stealing cars. At this point, the defendant has shown very little interest in doing any of the basic things needed for him to live a law-abiding life. The government agrees with the defendant's belief that he should move out of the Portland area "to distance himself from negative influences." (PSR ¶ 65). Staying in Portland will at best, result in more prison time and at worst, end up with his death.

The Government's proposed advisory guideline range is thirty-seven to forty-six months, factoring the recommended adjustments. While not bound by the Sentencing Guidelines, district courts must consult the guidelines and take them into account when sentencing. *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 767 (2005). The sentencing guidelines are advisory and one of the statutory factors this Court must consider when imposing a sentence. *See* 18 U.S.C. § 3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347-48 (2007). The guideline serves as "the starting point and the initial benchmark" in every sentencing proceeding and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Gall v. United States*, 552 U.S. 38, 49 (2007); *Rita*, 551 U.S. at 350. The guidelines serve as a "lodestone" at sentencing, and "cabin" or "anchor" a sentencing court's discretion. *Peugh v. United States*, 569 U.S. 530, 531 (2013). While advisory, the Supreme Court has observed that, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences." *Id*.

### Conclusion

Based on the foregoing, the Government recommends a 26-month sentence (low end of thirty-seven months minus the eleven months he will not receive credit for) with 3 years of supervised release and 18 months consecutive on his supervised release violation for a total of 44 months imprisonment.

Dated: June 4, 2025.                    Respectfully submitted,

                                        WILLIAM M. NARUS
                                        Acting United States Attorney

                                        */s/ Lewis S. Burkhart*
                                        LEWIS S. BURKHART, OSB #082781
                                        Assistant United States Attorney